FILED

MAY 5 - 2006

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>DAVID L. SHOREY aka SSI Development;<br>aka David L. Shorey dba The Business Store;<br>aka David L. Shorey, P.C., C.P.A.; and<br>MARY JANE SHOREY, aka Mary Jane<br>Cook,<br><br>                    Debtors. | Chapter 7<br><br>No. 4-04-1116-EWH<br><br>**MEMORANDUM DECISION**<br>(Opinion to Post) |

## INTRODUCTION

The court is asked to resolve two legal issues regarding Chapter 7 Debtors' claimed homestead exempt property. The first addresses the scope of the homestead exemption where the property has appreciated in value since the petition date; the second addresses whether a prepetition judgment can be a valid lien on the property.

Because Arizona's homestead exemption law exempts a specified amount of debtor's equity in homestead property, not the property itself, the bankruptcy estate is entitled to the appreciated value of unabandoned homestead property. An exemption claim which exempts more than what is permitted by law must, clearly and unambiguously, put all parties on notice that something more is being claimed. That did not occur in this case and, accordingly, the failure of the Chapter 7 Trustee to file an objection to the Debtors' homestead exemption did not remove the Debtors' home from the bankruptcy estate.

Under Arizona law, a recorded judgment does not become a lien on homestead property. The judgment holder may only execute the judgment against homestead property in the manner provided for by Arizona law. The failure of a judgment creditor to complete the statutory execution process prior to the judgment debtor filing for bankruptcy relief means that the judgment creditor cannot

execute the judgment against the homestead property. The reasons for these conclusions are explained in detail in the balance of this decision.

## FACTUAL SUMMARY

On March 12, 2004, David and Mary Jane Shorey ("Debtors") filed for Chapter 7 relief. Stanley Kartchner was appointed the Chapter 7 trustee ("Trustee"). The Debtors' Schedule A listed 6959 West Wild Canyon, Tucson, AZ 85750 ("Residence") as being their only real property asset. Schedule A listed the market value of the Residence as $550,000 with a total of $470,562 in claims secured by the Residence.

The Debtors claimed the Residence as exempt under A.R.S. § 33-1101.[1] Even though the Debtors' equity in the Residence on the date of filing was only $79,438, the Debtors claimed the full $100,000 exemption amount then available under A.R.S. § 33-1101.[2]

No timely objection was filed to the Debtors' exemption claim.[3] The Debtors' discharge was entered on September 22, 2004, but the case remains open. The Trustee alleges that the case has not been closed because the Debtors have not cooperated with the Trustee's efforts to administer non-exempt assets.[4]

---

[1] On the petition date, § 33-1101 provided in relevant part:
"A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value, any one of the following:
1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.
2. The person's interest in one condominium or cooperative in which the person resides.
3. A mobile home in which the person resides.
4. A mobile home in which the person resides plus the land upon which that mobile home is located."

[2] Section 33-1101 was amended in 2004 to increase the limit to $150,000.

[3] Fed. R. Bankr. P. 4003(b) requires that any objection to a claim of exemption be made within 30 days of the conclusion of the § 341(a) meeting.

[4] Whatever the reasons may be for the case's open status, they are not material to the issues being resolved in this Memorandum Decision.

2

The Trustee now seeks to sell the Residence because in the "hot" Tucson real estate market, the Residence has substantially appreciated in value since the petition date. The Debtors assert the Residence's current value is $650,000. The Trustee, based on the opinion of a real estate broker retained by the Trustee, asserts that the Residence has a value between $775,000 to $835,000.

On October 5, 2005, the Debtors filed a motion to allocate and determine rights ("Motion") seeking a determination that the failure of any party to timely object to the Debtors' homestead exemption removed the Residence from the bankruptcy estate. The Trustee filed a response on November 15, 2005, asserting that the Debtors' exemption applied only to the Debtors' right to receive cash proceeds upon a sale of the Residence. The Trustee asserts that because the Residence has not been abandoned, the Residence remains property of the estate which the Trustee may sell to realize its postpetition appreciation in value.

The Trustee's motion was joined by Deborah Lee Taylor McCarty ("McCarty"), who has filed an amended secured proof of claim based upon a judgment ("Judgment") in the approximate amount of $134,000. McCarty recorded the Judgment prepetition. The Trustee has filed an objection to McCarty's secured claim, asserting that it should be treated as a general, unsecured claim. McCarty's response to the Trustee's objection asserts that because the Residence's value now exceeds the applicable dollar limits of A.R.S. § 33-1101(A), that her Judgment is a valid lien secured by the Residence. In the alternative, McCarty asserts that she is a secured creditor because her initiation of an execution sale prepetition makes the Judgment a judicial lien within the meaning of 11 U.S.C. § 101(36).[5]

Oral argument on the Motion was held on January 3, 2006. Thereafter, the parties attempted to settle the matter, and the court deferred ruling pending the outcome of those negotiations. Negotiations have not succeeded, and the matter is now ready for decision.

---

[5] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

3

## ISSUES

1. What is the scope of the Debtors' homestead exemption?

2. Does McCarty have a valid, secured claim which must be paid from the sale proceeds prior to unsecured claims, if the Residence is sold by the Trustee?

## STATEMENT OF JURISDICTION

Jurisdiction is proper under 28 U.S.C. §§ 1334(a), 157(a), (b)(2)(E) and (O).

## DISCUSSION

### A. The Scope of the Debtors' Homestead Exemption

An estate in bankruptcy consists of all of a debtor's interest in property, legal or equitable, at the time a petition is filed. Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992). The Bankruptcy Code permits a debtor to exempt property of the estate pursuant to § 522(b). As explained by the U.S. Supreme Court, "[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." Owen v. Owen, 500 U.S. 305, 308 (1991); see also In re Smith, 235 F.3d 472, 478 (9th Cir. 2000) ("It is widely accepted that property deemed exempt from a debtor's bankruptcy estate revests in the debtor.")

Exemption rights are generally determined as of the petition date. In re Smith, No. AZ-05-1163-SKMO, 2006 WL 1072029, at *4 (9th Cir. B.A.P. Apr. 7, 2006); In re Herman, 120 B.R. 127, 130 (9th Cir. B.A.P. 1990). Arizona has elected to "opt out" of the federal exemption scheme.[6] Arizona law, therefore, governs the scope of the Debtors' homestead exemption.

---

[6] A.R.S.§ 33-1133(B) provides as follows: "Notwithstanding subsection A, in accordance with 11 U.S.C. 522(b), residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d). Nothing in this section affects the exemptions provided to residents of this state by the constitution or statutes of this state."

4

1. <u>Arizona's homestead exemption only exempts a specified amount of equity in the homestead property.</u>

Arizona courts have long held that the Arizona exemption statute is intended to save from execution, the amount of money designated in the statute "rather than [any] particular tract of land." In re Charles, 25 B.R. 331, 333-34 (9th Cir. B.A.P. 1982) (citing Union Oil Co. of Arizona v. Norton Morgan Comm. Co., 23 Ariz 236, 241, 202 P. 1077, 1079 (1922), and Security Trust & Savings Bank v. McClure, 29 Ariz. 325, 332, 241 P. 515, 517 (1925)). As noted in Schreiber v Hill, 54 Ariz. 345, 350, 95 P.2d 566, 568 (1939), the real exemption granted by the homestead statute is the dollar amount stated, not the particular tract of land subject to the declaration. Arizona's homestead statute is, therefore, similar to the California statutes considered by the Ninth Circuit in In re Reed, 940 F.2d 1317 (9th Cir. 1991) and In re Hyman, 967 F.2d 1316 (9th Cir. 1992).

In Reed, the Chapter 7 debtor had claimed a $45,000 homestead exemption in his community property residence, the then maximum statutory homestead exemption under California law. Without the trustee's knowledge or the court's approval, the residence was subsequently sold and debtor sought to retain all proceeds. The court found that the debtor's homestead exemption removed from the bankruptcy estate the debtor's right to receive the $45,000 from a sale of the residence, but that "the residence itself and all remaining net proceeds were still part of the bankruptcy estate and subject to administration by the Trustee." 940 F.2d at 1322.

In Hyman, the Chapter 7 debtors claimed their house as their "homestead" and claimed the value of the exemption as being $45,000, the maximum then available under California law. Schedule A indicated that the Hymans' house had $22,000 in equity over all liens and the debtors' exemption. The Trustee, therefore, sought to sell the house. The Hymans claimed that any appreciation in value of their house, beyond the petition date, should be paid to them because the value of the house, like their homestead exemption right, was fixed as of the petition date. The Ninth Circuit in Hyman rejected that argument:

> [T]he relevant figure is the actual sale price of the property, not the value of the property listed by the debtor on his schedule of assets...[N]othing in section 522, or anywhere else in the Bankruptcy Code for that matter, requires that non-exempt assets have their values frozen on the petition date.

967 F.2d at 1320 n.9.

In this case, the Debtors have attempted to distinguish the Reed and Hyman cases because those cases interpret California law and because both cases involved property which had equity on the petition date. However, Arizona's homestead law, like California's homestead law, only exempts a homeowner's right to receive a set dollar amount upon a sale of the house. See In re Farthing, 2006 WL 802750, 802753 n.12 (Bankr. D. Ariz. Feb. 28, 2006). As a result, that right to receive a set dollar amount is the only thing which vests in a debtor as a result of a homestead exemption claim. It may be, as in this case, that on the petition date, when a debtor's exemption rights are fixed, that there is no equity in the homestead property for the bankruptcy estate, but that fact does not remove the property from the estate. All that was removed by the Debtors' exemption claim is their right to receive $100,000 if the Residence is sold. Further, that right only comes into play if the Trustee attempts to sell the Residence. Hyman, 967 F.2d at 1321. The Residence and any appreciated value remain estate property until the Residence is formally abandoned by the Trustee or the case is closed under A.R.S. § 554(a), (b) or (c).

2. **The Debtors' claim of exemption of the entire Residence was not clear and unambiguous, therefore the 30-day deadline of Rule 4003(b) does not apply.**

Even if Arizona homestead law only exempts a specified amount of equity, rather than the underlying property, the Debtors could still prevail on the Motion, under the holding of Taylor v. Freeland & Kronz, if the court finds their claim of the entire Residence as exempt was clear and unambiguous. In Taylor, the U.S. Supreme Court found that a trustee may not contest the validity of a claimed exemption after the Rule 4003 30-day period has expired, even though the debtor has no colorable basis for claiming the exemption. 503 U.S. at 638.

While the holding of Taylor is very broad, the facts of the case are important to an understanding of how the holding should be applied. In Taylor, the debtor listed as exempt, the

6

money she expected to win in an employment discrimination suit, but listed the value of the exemption as unknown. 503 U.S. at 640. At the first meeting of creditors, the debtor and debtor lawyers in the discrimination suit informed Taylor, the Chapter 7 trustee, that they estimated she might win $90,000, an amount far in excess of the statutory exemption amount. After the first meeting of creditors, Taylor sent a letter to the debtor indicating that he considered the potential proceeds of the suit to be estate property and sent a letter to the law firm asking for more details about the law suit. Id. Taylor, however, did not object to the debtor's exemption claim because he believed the discrimination suit might be a "nullity." Id. at 641. When Taylor proved mistaken, and the debtor received a substantial award, he filed a law suit seeking a turnover of enough of the proceeds to pay the debtor's unsecured creditors in full. Id. In rejecting Taylor's argument, Justice Thomas stated:

> Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption.

503 U.S. at 644, 112 S. Ct. at 1648.

Taylor, therefore, is a case where the trustee was on notice that something more than the statutory exemption amount was being claimed, but did nothing to preserve the estate's rights to retain the non-exempt portion of the property.

Since Taylor, a number of courts have found that in order for the holding in Taylor to apply, the claim of an otherwise unavailable exemption must be unambiguous. E.g., In re Clark, 266 B.R. 163, 170 (9th Cir. B.A.P. 2001) ("Regardless, the manner in which the exemption was valued is inherently ambiguous and calls for valuation at some point in the proceedings. When debtors claim an exemption at the 'maximum allowed,' that can only mean the maximum allowed by law."); In re Morgan-Busby, 272 B.R. 257, 265 (9th Cir. B.A.P. 2002) ("[E]ven if California law allowed Debtors to exempt the shares and not just the amount of their exemption, Debtors could not do so in this case because their schedules were ambiguous. Because Debtors control their schedules, we construe any ambiguities in the schedules against them").

7

In this case, the Debtors' Schedule C describes the Residence as the property being claimed as exempt, specifies that the claim is being made pursuant to A.R.S. § 33-1101 and claims the value of the claimed exemption as $100,000. The Debtors' exemption claim is, therefore, almost identical to that made by the debtors in <u>Hyman</u>, which the Ninth Circuit found was insufficient to notify the trustee that the debtors were claiming their entire homestead as exempt property, not just the statutory amount allowed under California law. <u>Hyman</u>, 967 F.2d at 1319.

In this case, the Trustee's failure to object to the Debtors' exemption claim did not remove the Residence from the bankruptcy estate because it was not sufficiently clear that the Debtors were claiming something more than the $100,000 equity limit available to them under A.R.S. § 33-1101 (A). Under the holding in <u>Taylor</u>, the failure of the Trustee to object to the Debtors' homestead claim permits them to claim the full $100,000 available under Arizona's homestead law even though their equity in the Residence on the petition date was only $80,000. However, because the Debtors' exemption claim did not adequately notify the Trustee that the Residence itself was being claimed as exempt, the Debtors are not entitled to anything more than the $100,000 value of the exemption they listed on Schedule C.

3. <u>Possible consequences of homestead properties remaining estate property</u>

A bankruptcy estate retains an interest in estate property until the property is formally abandoned by the trustee or the case is closed which results in abandonment under § 554(c). In this case, there has been no abandonment because the case is still open. No application for abandonment was filed by the Debtors, apparently because they believed that their claim of exemption removed the Residence from the estate. For the reasons set forth above, the Debtors were mistaken. The court notes, however, that it has not been the routine practice in the Tucson Division of the Bankruptcy Court for the District of Arizona for debtors to seek abandonment of homes which, on the petition date, have equity values below the Arizona homestead limits.

Case 4:04-bk-01116-EWH    Doc 41    Filed 05/05/06    Entered 05/05/06 16:01:58    Desc
Main Document      Page 8 of 13

The Motion highlights potential problems for both debtors and Chapter 7 trustees when homes are not removed from bankruptcy estates.[7] For example, since the Residence remained property of the estate, was it the Trustee's obligation to assure that taxes and mortgage payments were made and that the Residence was insured? Is there a danger that trustees will deliberately try to delay the closing of cases in an effort to see if a debtor's house will appreciate in value so that the trustee can sell it, generating money for creditors and an increase in recovery for the Trustee? Should trustees be charging rent to debtors and making mortgage payments in every Chapter 7 case where there has not been an abandonment? If houses are sold postpetition for amounts over debtors' exemption limits, should debtors be allowed equitable lien or administrative claims for amounts expended which benefitted the estate by increasing the value of their homes?[8] Will evidentiary hearings be required to determine the reasonable amount of rent trustees should be charging or the amount of any equitable lien claims of the debtor homeowners? These are significant questions, but they are not properly before the court at this time and, therefore, cannot be addressed in this decision. The court notes, however, that debtors may avoid some of the problems listed above by promptly bringing motions to have their homesteads abandoned after their cases are filed. Also, trustees may decide to abandon homes rather than face the liability questions which arise if Chapter 7 debtors' homes remain estate property for a significant period of time. The court also notes that deliberately holding a case open to see if real estate values *might*

---

[7] Debtors also argue that if a declaration of homestead only removes from the bankruptcy estate a debtor's right to receive the statutorily defined equity value, Chapter 13 debtors' homes will become "moving targets" requiring that plan payments be constantly adjusted for increases in home values. However, in Chapter 13 cases, all property of the estate vests in the debtors at confirmation under § 1327(a). A number of courts have held, therefore, that in Chapter 13 cases where a plan has been confirmed, that any increased equity in the debtors' home is not property of the estate even if the confirmed Chapter 13 case is later converted to Chapter 7. See In re Slack, 290 B.R. 282 (Bankr D. N.J. 2003); In re Wegner, 243 B.R. 731 (Bankr. D. Neb. 2000).

[8] Debtors may have a right, in some circumstances, to make an administrative claim in a case. Although assisting a trustee to sell a homestead may simply fall within a debtor's statutory duties under § 521(a)(3) and (4). See In re Blurton, 334 B.R. 602 (Bankr. W.D. Tenn. 2005).

9

increase could be found to be inconsistent with a trustee's duties to promptly and efficiently administer cases under § 704(a)(1).

B. McCarty's judgment lien did not attach to the Residence

A.R.S. § 33-964 (B) provides :

> A recorded judgment shall not become a lien upon any homestead property. Any person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien. (emphasis added)

The reasoning for prohibiting the attachment of judgment liens to homestead property was explained by the court in In re Charles, 25 B.R. 331, 333 (9th Cir B.A.P. 1982):

> It is exactly this intention to protect the debtor's homestead equity which conflicts with the attachment of any judgment lien on homesteaded property, even where an excess equity may exist. A prospective buyer, upon discovering the existence of such liens and realizing that the judgment debtor cannot transfer his homestead rights, will pay the debtor a lesser sum for his homestead property, in proportion to the amount of the attached liens. In this way, the mere attachment of the lien may effectively preclude the judgment debtor from obtaining the full potential value of his homestead.[9]

McCarty acknowledges that the only two Arizona cases to directly consider A.R.S. § 33-964 have held that the statute protects *property*, not just the equity value of a judgement debtor's homestead. See Evans v Young, 135 Ariz. 447, 661 P.2d 1148 (Ariz. Ct. App. 1983); Grand Real Estate Inc. v. Sirignano, 139 Ariz. 8, 676 P.2d 642 (Ariz. Ct. App. 1983). The Evans court held that the only way judgment lien holders can reach excess equity in a judgment debtor's homestead is to follow the procedures set out in A.R.S. § 33-1105.[10] 135 Ariz. at 452, 661 P.2d at 1153.

---

[9] Notwithstanding the clear language of A.R.S. § 33-964, this court is routinely confronted with requests for "comfort" orders avoiding judicial liens on homestead properties which debtors must obtain before they can obtain title insurance to sell or refinance their homes.

[10] A.R.S. § 33-1105 provides as follows: A judgment creditor other than a mortgagee or beneficiary under a trust deed may elect to sell by judicial sale as specified in title 12 the property in which the judgment debtor has a homestead under § 33-1101, subsection A, provided that the judgment debtor's interest in the property shall exceed the sum of the judgment debtor's homestead plus the amount of any consensual liens on the property having priority to the judgment. A bid shall not be accepted by the officer in charge of a sale under this section which does not exceed the amount of the judgment debtor's homestead plus the amount of any consensual liens on the property having a priority to the judgment plus the costs of the sale allowable under title 12. After receipt of a sufficient bid, the officer shall sell the property. From the proceeds, the officer shall first pay the amount of the homestead to the judgment debtor plus the amount of any consensual liens on the property having a priority

10

Under the holding of Grand Real Estate, McCarty's failure to complete ~~the appraisal and execution~~ tion procedures ~~of~~ reserved under A.R.S. § 33-1105 prior to the filing of the Debtors' petition, renders her claim unsecured. 139 Ariz. at 13, 676 P.2d at 647. McCarty asserts that the holdings of Evans and Grand Real Estate are no longer binding under current Arizona exemption law, but she fails to point to any changes in the law which invalidate those holdings.[11]

Finally, McCarty attempts to avoid the effect of A.R.S. § 33-964 by asserting her prepetition commencement of execution proceeding makes her judgment a judicial lien under § 101(36). That section defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process." The definition does not supercede state law in determining the effect of McCarty's judicial lien. See In re Pepper, 210 B.R. 480, 482 (Bankr. D. Colo. 1997) ("The question of whether a 'lien' becomes a 'charge against and/or an interest in property' is answered by state law.")

Arizona law gives judgment holders the limited right to seek an execution sale of homestead property if there is equity above the exemption limit. See A.R.S. § 33-1103(A)(3). That limited right can only be exercised pursuant to A.R.S. § 33-1105. The fact that McCarty commenced an execution proceeding, prepetition, did not result in her judgment becoming a lien on the Residence.[12] Her failure to complete the A.R.S. § 33-1105 process before the Debtors filed for Chapter 7 relief, under the holding of Grand Real Estate, makes McCarty a general, unsecured

---

to the judgment and then pay the costs of the sale. The remaining proceeds shall be applied in accordance with the provisions of § 12-1562, subsection A. If the sale does not occur, either because of voluntary abandonment by the judgment creditor or because no sufficient bid is made, the judgment creditor may not charge any costs or attorneys fees incurred in connection with the sale against the judgment debtor by addition to the judgment or otherwise.

[11] California has passed a statute which specifically provides for the attachment of a judicial lien to any surplus over all liens and the applicable homestead amount. Cal. Civ. Proc. § 704.950(c) (1992) as described in In re Watts, 298 F.3d 1077 (9th Cir. 2002). The court has not found, nor has McCarty cited a similar Arizona law.

[12] Indeed, McCarty's commencement of A.R.S. § 33-1105 procedure, prepetition, was completely meaningless since the Residence did not have equity above the homestead cap on the petition date. In such circumstances no sale can be completed under A.R.S. § 33-1105.

11

creditor of the estate because there is no other real property to which her judgment lien could attach.

## CONCLUSION

The Trustee may sell the Debtors' Residence to realize any appreciated value for the benefit of unsecured creditors. McCarty's Judgment is not a lien on the Residence because Arizona law bars judicial liens from attaching to homestead property. This decision does not address what rights, if any, the Debtors may have to an administrative expense or equitable lien claim regarding payments or improvements they have made which have increased the value of the Residence. Orders consistent with the holdings in this decision will be entered this date.

DATED: May 5, 2006

EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

COPIES of the foregoing mailed
this 5th day of May, 2006, to:

Walter F. Wood, Esq.
110 S. Church Ave., Suite 4398
Tucson, AZ 85701
Attorney for Debtors

Gregory P. Gillis, Esq.
Jaburg & Wilk, P.C.
14500 N. Northsight Blvd., Suite 116
Scottsdale, AZ 85260
Attorneys for Secured Creditor McCarty

Stanley J. Kartchner
7090 N. Oracle Rd. #178-204
Tucson, AZ 85704
Trustee

Michael M. Neal, Esq.
110 S. Church Ave., Suite 4298
Tucson, AZ 85701
Attorney for Chapter 7 Trustee

| | |
|---|---|
| 1 | Office of the United States Trustee<br>230 North First Avenue, Suite 204 |
| 2 | Phoenix, AZ 85003-1706 |
| 3 | By _____<br>     Judicial Assistant |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |